DOROTHY HUNT, EMPLOYEE, PLAINTIFF-APPELLANT v. NORTH CAROLINA STATE UNI-
VERSITY, EMPLOYER, SELF-INSURED, KEY RISK MANAGEMENT SERVICES,
ADMINISTERING AGENT, DEFENDANTS-APPELLEES

No. COA02-842

(Filed 15 July 2003)

## 1. Workers' Compensation— permanent and total disability— failure to meet burden of proof

The Industrial Commission did err in a workers' compensation case by concluding that plaintiff employee failed to prove

---

permanent and total disability, because: (1) the fact that a doctor gave an opinion of permanent and total disability at some point in his testimony did not operate to shift the burden to defendant employer when a review of the testimony as a whole revealed that plaintiff failed to prove she was permanently and totally disabled; and (2) there were no preexisting conditions to justify permanent and total disability.

## 2. Workers' Compensation— refusing to allow presentation of additional evidence—change of condition

The Industrial Commission did not err or abuse its discretion in a workers' compensation case by refusing to allow plaintiff employee to present additional evidence regarding the issue of change of condition under N.C.G.S. § 97-47, because: (1) the evidence predated the decision of the full Commission; and (2) plaintiff's contention would compel the full Commission to accept any new evidence submitted between the time of the hearing before the deputy commissioner and a hearing before the full Commission, which would be contrary to Rule 701(1) of the Workers' Compensation Rules and would divest the full Commission of its discretion to consider new evidence.

## 3. Workers' Compensation— sanctions—attorney fees

The Industrial Commission did not abuse its discretion in a workers' compensation case by failing to award to plaintiff employee sanctions and/or attorney fees under N.C.G.S. § 97-88.1.

Judge WYNN dissenting.

Appeal by plaintiff from Opinion and Award entered 6 February 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 March 2003.

*Law Offices of George W. Lennon, by George W. Lennon and Michael W. Ballance, for plaintiff.*

*Roy Cooper, Attorney General, by Dahr Joseph Tanoury, Associate Attorney General, for defendants.*

STEELMAN, Judge.

Plaintiff, Dorothy Hunt, appeals an opinion and award by the North Carolina Industrial Commission (Commission). For the reasons discussed herein, we affirm the opinion and award of the Commission.

HUNT v. N.C. STATE UNIV.

[159 N.C. App. 111 (2003)]

Plaintiff had worked as a library assistant at North Carolina State University (NCSU) for 22 years. On 22 May 1998, she slipped on a wet floor at work, caught herself with her right hand and fell on the right side of her posterior. She reported her injury to Paula Barnes, NCSU's workers' compensation disability benefits coordinator, who authorized her go to Blue Ridge Primary Care.

Subsequently, plaintiff visited her own physician, Dr. Edward B. Yellig, who referred her to a hand specialist, Dr. Krakauer. Dr. Krakauer determined that plaintiff sustained a small wrist fracture as a result of the fall. Plaintiff was also seen by Dr. T. Craig Derian for her back.

Plaintiff testified that after her fall on 22 May 1998, her back began hurting. It was eventually determined that plaintiff had degenerative disc disease, which had been non-symptomatic prior to her 22 May 1998 fall. Although her doctors testified the fall did not cause her degenerative disc disease, each of the doctors stated that the fall aggravated the condition and possibly triggered the back pain.

Plaintiff filed a Form 18, notice of injury, asserting wrist and back injuries. Thereafter, the parties entered into a Form 21 agreement for compensation for plaintiff's wrist fracture. The employer denied that any back injury was related to the accident.

After her injury on 22 May 1998, plaintiff continued to work until November 1999, when she was placed on state disability retirement. The Commission awarded plaintiff permanent partial disability compensation for all of her injuries. Plaintiff appeals.

The Commission's findings of fact are conclusive on appeal if they are supported by any competent evidence. *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). Thus, on appeal, the appellate court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965).

[1] In her first assignment of error, plaintiff argues that the Commission erred as a matter of law by concluding that she failed to prove permanent and total disability. We disagree.

In a claim for permanent and total disability, an employee must prove the existence of the disability and its extent. *Saunders v.*

*Edenton Ob/Gyn Ctr.*, 352 N.C. 136, 530 S.E.2d 62 (2000). An employee may meet this burden of proof in one of four ways: (1) the production of medical evidence that he or she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he or she is capable of some work, but that he or she has, after a reasonable effort on his part, been unsuccessful in an effort to obtain employment; (3) the production of evidence that he or she is capable of some work but that it would be futile because of preexisting conditions, *i.e.*, age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he or she has obtained other employment at a wage less than that earned prior to the injury. *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 562 S.E.2d 434 (2002), *aff'd*, 357 N.C. 44, 577 S.E.2d 620 (2003).

In this case, plaintiff contends that she met her initial burden to show that she was permanently and totally disabled based upon medical evidence presented by one of her treating physicians. She further contends that the burden then shifted to defendant to prove that she retained wage earning capacity. She asserts that to rebut the presumption, defendant cannot use evidence that she continued to work because her position had been highly modified due to her disability. She further asserts that although she was capable of some work, it would be futile to seek other employment based upon her preexisting conditions.

In a careful review of the record, we note that the only medical evidence of permanent and total disability was found in the testimony of Dr. Yellig. With respect to Dr. Yellig's testimony, the Commission made the following finding:

> During his deposition, Dr. Yellig initially testified that the plaintiff was permanently and totally disabled. However, Dr. Yellig also testified that the plaintiff could work between two to six hours per day with limited time and exertion and limited demands for speed and productivity. Once presented with the definition of permanently and totally disabled as "an inability to earn wages", Dr. Yellig ultimately opined that plaintiff was not permanently and totally disabled.

The Commission then concluded that "[p]laintiff has failed to prove that she is permanently and totally disabled as a result of her injury by accident of May 22, 1998 and is therefore not entitled to permanent and total disability compensation."

The Commission correctly viewed the testimony of Dr. Yellig as a whole and then determined that plaintiff had failed to prove that she was permanently and totally disabled. The fact that a doctor gives an opinion of permanent and total disability at some point in his testimony does not necessarily operate to shift the burden to the defendant. The Commission properly concluded that the medical testimony did not establish that plaintiff was permanently and totally disabled.

The Commission also considered preexisting conditions.

1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years of age with a college degree in Spanish. Plaintiff's work history includes working in a hospital, working at Duke University's library and working as a library assistant for defendant-employer for 22 years.

2. Plaintiff's medical history includes high blood pressure, arthritis, and right thumb surgery due to an arthritic condition nine years prior to the hearing before the Deputy Commissioner. None of these conditions affected plaintiff's ability to work. Furthermore, plaintiff has no history of prior back problems.

. . . .

6. By September 14, 1998, Dr. Yellig diagnosed plaintiff with fibromyalgia and degenerative disc disease of the lumbosacral spine. He also prescribed Prozac to treat plaintiff's depression. By February 19, 1999, Dr. Yellig thought that plaintiff suffered from chronic fatigue syndrome.

. . . .

9. Upon referral from Dr. Yellig, plaintiff presented to Dr. T. Craig Derian, an orthopedic surgeon, on July 1, 1999. Dr. Derian ordered an MRI, which revealed that plaintiff had multiple level disc degeneration of the low back with no definite disc rupture or spinal stenosis. Dr. Derian found plaintiff to be at maximum medical improvement with a ten percent permanent partial disability of the back. He also found plaintiff capable of performing light duty work with frequent position changes and a fifteen-pound lifting restriction.

10. According to Dr. Derian, the symptoms for which he treated plaintiff were related to her fall of May 22, 1998 and plaintiff's fall aggravated her pre-existing, non-symptomatic degenerative disc condition. Dr. Derian also indicated that

plaintiff may continue to experience some waxing and waning of her pain symptoms.

11. Plaintiff was seen by George Venters, an orthopedic surgeon, on July 27, 1999 for an independent medical examination. Dr. Venters indicated that the fall of May 22, 1998 did not cause plaintiff's degenerative disc disease and that no further active treatment was needed. He had a difficult time assessing a permanent partial rating based on plaintiff's subjective complaints, but he did indicate that plaintiff's permanent partial disability rating would be somewhere between five and ten percent. Dr. Venters also recommended that plaintiff avoid repetitive lifting and bending.

12. Throughout her medical treatment following her injury by accident of May 22, 1998, plaintiff continued to work in her regular job. Following the injury by accident of May 22, 1998, plaintiff demonstrated an ability to continue to earn wages. Accordingly, plaintiff is not permanently and totally disabled as a result of any injuries or conditions relating to her injury by accident.

There were no preexisting conditions to justify permanent and total disability. There is ample evidence in the record to support each of these findings by the Commission. These findings, in turn, support the Commission's conclusion of law that plaintiff was not permanently and totally disabled.

Plaintiff failed to meet her burden of proof of showing permanent and total disability. Thus, we need not discuss plaintiff's contentions concerning any modifications of her job. This assignment of error is without merit.

[2] In her second assignment of error, plaintiff argues that the Commission erred and abused its discretion by refusing to allow plaintiff to present additional evidence. We disagree.

Rule 701 of the Workers' Compensation Rules sets forth procedures applicable to an appeal to the Full Commission. Rule 701(6) provides that "[n]o new evidence will be presented to or heard by the Full Commission unless the Commission in its discretion so permits." In this case, following the ruling by the Deputy Commissioner on 20 October 2000, plaintiff moved, on 27 March 2001, for the Full Commission to receive additional evidence. This evidence was an affidavit from plaintiff stating that she had retired on disability, effec-

tive 24 January 2001. It also contained documents concerning her retirement and rehabilitation evaluation dated 26 February 2001. The affidavit and attachments consisted of some twenty-nine pages of material. In its opinion and award, the Full Commission concluded that "[p]laintiff is not entitled to submit new evidence that concerns the issue of change of condition which is more appropriate for a full evidentiary hearing. The issue of change of condition is not properly before the Full Commission."

Plaintiff contends that in order to show a change of condition under N.C. Gen. Stat. § 97-47, she would have to show a "substantial change in physical capacity to earn wages, occurring after a final award of compensation[.]" *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 654, 508 S.E.2d 831, 835 (1998). The final award of compensation here would be the opinion and award of the Full Commission. Since this evidence predated the decision of the Full Commission, plaintiff is precluded from introducing it at a subsequent hearing under N.C. Gen. Stat. § 97-47.

Taken to its logical conclusion, plaintiff's contention would compel the Full Commission to accept *any* new evidence submitted between the time of the hearing before the Deputy Commissioner and a hearing before the Full Commission, if that evidence could be used in the future as a basis for a change in condition under N.C. Gen. Stat. § 97-47. This is clearly contrary to the provisions of Rule 701(1) and would divest the Full Commission of its discretion to consider new evidence. This assignment of error is without merit.

[3] In her third assignment of error, plaintiff argues that the Commission erred by failing to award sanctions and/or attorney fees pursuant to N.C. Gen. Stat. § 97-88.1. We disagree and summarily hold that the record fails to show that the Commission abused its discretion in declining to sanction NCSU.

AFFIRMED.

Judge TYSON concurs.

Judge WYNN dissents.

WYNN, Judge dissenting.

Because I conclude the North Carolina Industrial Commission ("Commission") decided the claimant's motion to add new and addi-

tional evidence under a misapprehension of the law and opted not to exercise its discretion, I dissent.

On 21 July 1999, the Deputy Commissioner heard evidence in Ms. Hunt's claim for worker's compensation arising out of a 22 May 1998 work-related injury. After this hearing, Ms. Hunt was removed from work by her physician on 24 November 1999. After receiving short-term disability benefits for one year, she was notified on 20 February 2001 that she had been approved for long-term disability benefits by the North Carolina Department of Treasury, Retirement Division. After receiving this notification, she officially retired from N.C. State University on 23 February 2001. At the time of her hearing before the Deputy Commissioner, none of this information was available.

On 20 October 2000, the Deputy Commissioner rendered its *Opinion and Award* and thereafter, Ms. Hunt filed her notice of appeal to the full Commission. After preparation of the transcript, Ms. Hunt filed a Form 44, Application for Review, on 16 February 2001 which listed her assignments of error. On 26 February 2001, she provided a sworn affidavit detailing her new and additional evidence to her attorney, and then, on 27 March 2001, Ms. Hunt filed her motion to receive new and additional evidence pursuant to N.C. Gen. Stat. § 97-85 and Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission. Instead of ruling upon her motion, the Commission held her motion in abeyance until consideration by the Commission at the hearing on this matter.

In the full Commission's Opinion and Award, the Commission concluded:

> 7. Plaintiff is not entitled to submit new evidence that concerns the issue of change of condition which is more appropriate for a full evidentiary hearing. The issue of change of condition is not properly before the Commission.

On appeal, Ms. Hunt contends the Commission resolved her motion under a misapprehension of the law. Relying upon Rule 701 of the Workers' Compensation Rules, the majority held "since this evidence predated the decision of the Full Commission, plaintiff is precluded from introducing it at a subsequent hearing under N.C. Gen. Stat. § 97-47. Taken to its logical conclusion, plaintiff's contention would compel the Full Commission to accept any new evidence submitted between the time of the hearing before the Full Commission,

**HUNT v. N.C. STATE UNIV.**

[159 N.C. App. 111 (2003)]

if that evidence could be used in the future as a basis for a change in condition under N.C. Gen. Stat. § 97-47. This is clearly contrary to the provisions of Rule 701(1) and would divest the Full Commission of its discretion to consider new evidence." I respectfully disagree.

While I agree with the majority's conclusion that Ms. Hunt would not be able to seek consideration of her new and additional evidence under the provisions of N.C. Gen. Stat. § 97-47, I disagree with their conclusion that "plaintiff's contention would compel the Full Commission to accept any new evidence submitted between the time of the hearing before the Deputy Commissioner and a hearing before the Full Commission." Pursuant to N.C. Gen. Stat. § 97-85 and Rule 701(6) of the Workers' Compensation Rules[1], whether the full Commission considers new evidence is within the sound discretion of the Commission which is reviewable by our appellate courts for manifest abuse of discretion. *See Keel v. H & V Inc.*, 107 N.C. App. 536, 542, 421 S.E.2d 362, 366-67 (1992) (stating "the powers granted the Commission to review the award and to receive additional evidence are plenary powers to be exercised in the sound discretion of the Commission. Whether such good ground has been shown is discretionary and will not be reviewed on appeal absent a showing of manifest abuse of discretion."); *see also Pittman v. International Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 708 (1999), *aff'd by* 351 N.C. 42, 519 S.E.2d 524 (1999) (stating that "in exercising its discretion to receive additional evidence, the Commission should consider all the circumstances of the case, including the delay involved in taking additional evidence, and should not encourage a lack of pre-deposition preparation by counsel or witnesses"). In this case, however, the full Commission did not realize it was within its discretion to consider Ms. Hunt's new and additional evidence. Accordingly, this case should have been remanded to the full Commission for a resolution of the claimant's motion.

---

1. N.C. Gen. Stat. § 97-85 states "If application is made to the Commission . . . the full Commission shall review the award, and if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award. . . . Rule 701(6) of the Workers' Compensation Rules states "No new evidence will be presented to or heard by the Full Commission unless the Commission in its discretion so permits."