ROBERT H. ALPHIN, Employee, Plaintiff v. TART L.P. GAS COMPANY, Employer, AETNA LIFE & CASUALTY COMPANY, Carrier, Defendants

No. COA07-731

(Filed 16 September 2008)

**1. Workers' Compensation— continuing disability—total or partial disability—medical evaluation**

The Industrial Commission did not err in a workers' compensation case by concluding the issue of whether plaintiff employee was totally or partially disabled was properly before the Commission for decision because the issue was consistently before the Commission including evidence that: (1) the Commission ordered an independent medical evaluation not only to determine the extent of plaintiff's continued disability, if any, but also to assess whether plaintiff would benefit from a resumption of vocational rehabilitation; (2) plaintiff's own Form 44 application for review raised the issue as well as the relevance of the parties' Form 21 to

2. We note defendant suggested interpleading the funds in a letter to the parties dated 29 July 2003.

that issue; (3) inasmuch as the Commission decides claims without formal pleadings, it is the duty of the Commission to consider every aspect of plaintiff's claim whether before a hearing officer or on appeal to the full Commission; and (4) the Commission was entitled to seek out additional evidence, such as the medical evaluation, in order to address the issues before it.

**2. Workers' Compensation— rebuttable presumption—continuing total disability**

The Industrial Commission erred in a workers' compensation case by concluding that plaintiff's presumption of continuing total disability had ended, and the case is remanded for a determination of whether defendants have rebutted plaintiff's presumption, because: (1) the final Form 26 provided for payment of total disability benefits for necessary weeks; (2) the Court of Appeals has previously held that an agreement for the payment of compensation, when approved by the Commission, is as binding on the parties as an order, decision, or award of the Commission unappealed from or an award of the Commission affirmed on appeal; (3) the Commission and defendants identified no waiver by plaintiff of the presumption of disability arising from the Form 26; (4) the Commission made no finding that it conducted a hearing at which defendants bore the burden set out in *Kennedy*, 101 N.C. App. 24 (1990), and the record contained no finding by the Commission in any of its opinions and awards that suitable jobs were available for plaintiff and that he was capable of getting one taking into account both his physical and vocational limitations; (5) the Commission's finding that plaintiff reached maximum medical improvement was not the equivalent of a finding that the employee was able to earn the same wage earned prior to injury and does not satisfy defendant's burden of rebutting the presumption; (6) the fact that defendant was capable of earning wages in sedentary work does not rebut the presumption since it relates only to plaintiff's physical limitations and does not establish that suitable jobs exist and that plaintiff was capable of getting one taking into account both his physical limitations, the sedentary work limitation, and his vocational limitations; (7) an employee's release to return to work was not the equivalent of a finding that the employee was able to earn the same wage earned prior to the injury, nor did it automatically deprive an employee of the Form 21/26 presumption; and (8) while an employee cannot recover under N.C.G.S. §§ 97-29 and 97-31 simultaneously, the

employee has the option of choosing the most favorable recovery, and plaintiff did not elect his remedy when he accepted compensation for his rating under N.C.G.S. § 97-31.

### 3. Workers' Compensation— unjustified refusal to cooperate in vocational rehabilitation—sufficiency of evidence

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee did not make a proper showing that his unjustified refusal to cooperate in vocational rehabilitation had ceased because: (1) plaintiff's willingness to cooperate was based almost entirely on oral and written expressions of intent unsupported by current conduct corroborating those statements; (2) the lone step undertaken by plaintiff, seeking assistance from the State, occurred only four days before the hearing in front of the deputy commissioner; (3) in assessing the sincerity of plaintiff's representations, the Commission could appropriately consider, as it did, plaintiff's lack of recent conduct suggesting a willingness to cooperate and any recent conduct inconsistent with his expressed intent; (4) the Commission referred to plaintiff's pre-1995 conduct only in reference to plaintiff's testimony at the hearing that he believed that he had, during that time frame, fully cooperated; and (5) the Commission made ample findings of fact explaining its reasoning and the basis for its credibility determination in refusing to reinstate plaintiff's benefits terminated under N.C.G.S. § 97-25.

Appeal by plaintiff from opinion and award entered 22 March 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 December 2007.

*Brent Adams & Associates, by Robin K. Martinek, for plaintiff-appellant.*

*Hedrick Gardner Kincheloe & Garofalo, L.L.P., by Jeffrey A. Doyle and Susan J. Vanderweert, for defendants-appellees.*

GEER, Judge.

Plaintiff Robert H. Alphin appeals from an opinion and award of the North Carolina Industrial Commission denying his motion to reinstate benefits and determining that he failed to prove that he has been totally disabled or had diminished wage-earning capacity. Based upon our review of controlling precedents regarding the presumption of continuing disability arising from Form 21 and Form 26 agreements,

ALPHIN v. TART L.P. GAS CO.

[192 N.C. App. 576 (2008)]

we hold that the Commission erred in concluding that the presumption in this case had "ended." Instead, the burden of rebutting the presumption of continuing disability remained on defendants, and the Commission was required to determine whether defendants had met their burden before deciding that plaintiff was not entitled to indemnity compensation. With respect to plaintiff's motion to reinstate benefits, our standard of review requires that we uphold the Commission's determination that plaintiff did not show that his unjustified refusal to cooperate had ceased. Accordingly, we affirm in part and reverse and remand in part.

## Facts

Plaintiff suffered a compensable injury on 8 March 1990 resulting in low back pain radiating into his right leg. The parties executed a Form 21 pursuant to which defendants agreed to pay temporary total disability compensation to plaintiff for "necessary weeks"; the agreement was approved by the Commission on 2 April 1990. Subsequently, plaintiff returned to work on at least two occasions. The record indicates, however, that on 28 June 1990, the parties entered into a Form 26 agreement to reinstate temporary total disability compensation for "necessary weeks." On 13 July 1990, defendants filed, and the Commission approved, a Form 24 application to terminate compensation.

In October 1990, defendants filed another Form 26, stating that plaintiff had reached maximum medical improvement and agreeing to pay plaintiff compensation for a 10% permanent partial impairment to his back. The Commission approved the agreement on 1 November 1990, and defendants filed a Form 28B on 11 December 1990, stating that the case was being closed by the defendant carrier.

The parties executed a third Form 26 agreeing that plaintiff had again became totally disabled as of 23 July 1991 and agreeing to reinstate temporary total disability for "necessary weeks." On 16 December 1991, the parties entered into a fourth Form 26 agreeing that plaintiff had reached maximum medical improvement, that he had a 15% permanent partial impairment rating, and that defendants would pay plaintiff for the 5% increase in his rating. The Commission approved the fourth Form 26 agreement on 7 January 1992, and the defendant carrier filed another Form 28B closing the case.

A fifth Form 26 agreement was executed with the parties agreeing to payment of continuing temporary total disability compensation

beginning 4 March 1993 and continuing "for necessary weeks." The Commission approved this agreement on 11 May 1993.

In the opinion and award on appeal, the Commission found, that as of 11 November 1993, plaintiff was capable of earning wages in sedentary work with no bending and twisting, although if plaintiff was sitting, he would need a couple of minutes every half hour to stand. Plaintiff had a 25% permanent partial impairment rating to the back. These findings were based on the evaluation of Kenneth J. Rich, M.D. reflected in a note dictated on 11 November 1993. Defendants paid plaintiff the increase of 10% in his permanent partial impairment rating.

On 10 May 1994, the Commission ordered plaintiff to cooperate with vocational rehabilitation efforts. On 25 May 1994 and again on 30 November 1994, the Commission denied defendants' Form 24 applications to stop payment of compensation. Defendants filed another Form 24 on 17 May 1995, alleging that plaintiff had failed to comply with vocational rehabilitation. The Executive Secretary's Office approved this Form 24 on 5 July 1995 effective 5 May 1995.

Plaintiff filed a Form 33 request for a hearing on 17 April 1996, alleging that defendants refused to pay permanent and total disability compensation. Plaintiff also filed a motion for reinstatement of benefits on 24 June 1996 claiming that he had fully complied with defendants' rehabilitation efforts, but adding that if the Commission found he had failed to comply, he was at that point ready, willing, and able to fully and completely cooperate.

Following a hearing before the deputy commissioner on 19 December 1996, the deputy determined that plaintiff had participated in vocational rehabilitation in a reasonable fashion and that temporary total disability payments should be reinstated. The deputy, however, also found that plaintiff's entitlement to temporary total disability benefits ended when he reached maximum medical improvement on 7 November 1996, and after that date, plaintiff was entitled only to his rating.

Both parties appealed to the Full Commission. In an opinion and award filed 17 March 1999, the Commission reversed the deputy commissioner's decision concluding that plaintiff had failed to cooperate with vocational rehabilitation after being ordered to do so; defendants were entitled to terminate plaintiff's compensation for failure to cooperate; and plaintiff reached the end of his vocational rehabilita-

ALPHIN v. TART L.P. GAS CO.

[192 N.C. App. 576 (2008)]

tion period on 5 May 1995 when he refused to cooperate. In addition to addressing the failure to cooperate, the Commission found that "[a]s of November 11, 1993, plaintiff was capable of earning wages in sedentary work with no bending and twisting and with sitting and standing and if sitting, being provided a couple of minutes every half hour to stand."

Plaintiff appealed to this Court, and on 16 May 2000, this Court issued an opinion affirming in part, reversing in part, and remanding to the Full Commission. *Alphin v. Tart L.P. Gas Co.*, 138 N.C. App. 167, 535 S.E.2d 117 (May 16, 2000) (unpublished). The Court affirmed the Commission's determination that plaintiff had not complied with vocational rehabilitation, but held that the Commission was only authorized to suspend—and not terminate—benefits until plaintiff's unjustified refusal to cooperate ceased. The Court directed that the Commission's opinion and award on remand specify that plaintiff might be entitled to weekly compensation benefits upon a proper showing that plaintiff was willing to cooperate with defendants' rehabilitative efforts.

On 8 December 2000, the Full Commission entered an order denying plaintiff's motion for resumption of benefits on the grounds that "plaintiff has not made a proper showing nor has he affirmatively established that he is willing to cooperate with defendants' rehabilitative efforts." On the same date, based on this Court's decision, the Commission amended its opinion and award to provide that plaintiff's benefits were only suspended. The Commission, however, repeated its earlier finding that plaintiff was capable of earning wages in sedentary work with restrictions and awarded plaintiff compensation for his 25% permanent partial rating to his back subject to an offset for compensation already paid by defendants. Plaintiff filed notice of appeal to this Court on 3 January 2001, but never perfected the appeal.

On 5 April 2001, plaintiff filed a motion to resume payment of temporary total workers' compensation benefits, alleging that defendants refused to provide vocational rehabilitation despite plaintiff's expressed willingness to cooperate. On 20 April 2001, the Executive Secretary entered an order, stating: "Due to the fact that the issues contained in the Opinion and Award filed on March 17, 1999 are currently on appeal to the North Carolina Court of Appeals, IT IS HEREBY ORDERED that the plaintiff's Motion is denied in the administrative forum."

On 13 June 2001, plaintiff filed a Form 33 request for hearing, stating: "I have not received any temporary total benefits since May 5, 1995 and have not returned to gainful employment." The deputy commissioner issued an opinion and award finding that "[p]laintiff's verbal assurances of cooperation have not been accepted as credible, not only because of his previous problems with the rehabilitation providers but also because of his appearance and demeanor at the hearing."

Plaintiff appealed the deputy commissioner's decision to the Full Commission. On 9 May 2003, the Full Commission entered an order finding that "[t]he record indicates that the most recent medical evaluation of plaintiff's condition occurred on 11 November 1993, when Dr. Rich released plaintiff to return to work with restrictions and rated him with a 25% permanent partial disability to his back. The Full Commission finds as a fact that an updated independent medical evaluation is necessary to determine the extent of plaintiff's continuing disability, if any, and whether he would benefit from a resumption of vocational rehabilitation." The Commission ordered plaintiff to submit to an independent medical examination and held the record in the case open until the Commission received the results of the evaluation. The issue of reinstatement of plaintiff's benefits was held in abeyance pending receipt of the results of the evaluation and the closing of the record. Dr. Rich performed the independent medical examination on plaintiff, and the Commission received his deposition testimony in September 2004.

On 22 March 2007, the Full Commission filed an opinion and award affirming the holding, but entirely modifying, the opinion and award of the deputy commissioner. The Commission concluded that plaintiff had failed to make a proper showing that his unjustified refusal to cooperate with vocational rehabilitation had ceased and that plaintiff was not, therefore, entitled to have his compensation reinstated. It further determined that plaintiff's presumption of total disability had "ended," that plaintiff was required to prove continuing disability, and that plaintiff had not proven that he was totally disabled or had diminished wage-earning capacity after 5 May 1995. The Commission, therefore, denied plaintiff's claim for additional indemnity compensation. Plaintiff timely appealed the opinion and award to this Court.

## Discussion

Our review of a decision of the Industrial Commission is limited to a determination "whether there is any competent evidence to sup-

port the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). The findings of the Commission are conclusive on appeal when there is competent evidence to support them, even if there is evidence to the contrary. *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371, *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). " 'The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). This Court, however, reviews the Commission's conclusions of law de novo. *Deseth v. LensCrafters, Inc.*, 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).

I

[1] As an initial matter, plaintiff contends that the issue whether he was totally or partially disabled was not properly before the Commission for decision. According to plaintiff, the Commission's 9 May 2003 order requiring plaintiff to submit to an independent medical examination was improper because the Commission did not have the authority to review his disability status pursuant to N.C. Gen. Stat. § 97-83 (2007).

N.C. Gen. Stat. § 97-83 provides that "upon the arising of a dispute under this Article, either party may make application to the Commission for a hearing in regard to the matters at issue, and for a ruling thereon." Plaintiff points to the fact that defendants never applied to the Commission for a hearing on the issue of plaintiff's ongoing disability, but rather solely filed Form 24 applications seeking to terminate compensation for failure to cooperate with vocational rehabilitation efforts. Plaintiff further notes that this Court's prior decision in this case addressed only whether the Commission could terminate, as opposed to suspend, benefits under N.C. Gen. Stat. § 97-25 (2007) and, therefore, did not mandate that plaintiff prove his continuing disability.

It is well established that when a party appeals to the Full Commission, it is the "duty and responsibility of the full Commission to decide all of the matters in controversy between the parties." *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 482, 374 S.E.2d 610, 613 (1988). Our review of the record in this case indicates that the issue of plaintiff's total or partial disability has consistently been identified as an issue before the Commission.

ALPHIN v. TART L.P. GAS CO.

[192 N.C. App. 576 (2008)]

In plaintiff's 1996 motion to reinstate benefits, plaintiff asserted as one of his grounds that he "continues to be totally and permanently impaired and is unable to work in any capacity whatsoever" and, therefore, that he "is entitled to continue to receive benefits for his total disability pursuant to N.C.G.S. §97-29." In his Form 44 application for review of the deputy commissioner's decision denying reinstatement, plaintiff asserted that the deputy commissioner erred "on the grounds that the defendant did not carry its burden of proving that the claimant was capable of earning the same or greater wages that he earned at the time he was injured . . . ." Subsequently, after the Full Commission's opinion and award following remand by this Court, plaintiff filed a motion with the Executive Secretary for resumption of payment of benefits in support of which he asserted that he "has been totally and permanently impaired and disabled since his original on the job injury" and that he "has not been able to work in any capacity or earn any income whatsoever since March 8, 1990."

Plaintiff's Form 33 request for a hearing, dated 13 June 2001, stated that the parties had been unable to agree because plaintiff had "not received any temporary total benefits since May 5, 1995 and [had] not returned to gainful employ[.]" Defendants' response to the request asserted that the parties had been unable to agree because, in part, "[p]laintiff has not made a proper showing that he is entitled to any further [temporary total disability] compensation." In the pre-trial agreement, defendants contended that the issues to be heard included whether plaintiff had met his burden of proving that he is disabled as a result of his injury. Following the hearing and the deputy commissioner's decision, plaintiff's Form 44 application for review by the Full Commission assigned as error:

7. Paragraph Number 1 and 2 of the Award in that it finds that the plaintiff's claim for additional compensation is denied and orders each party to pay its own cost on the grounds that such "Award" ignores the plaintiff's status as a disabled and impaired employee, unable to work pursuant to the terms of the order of the North Carolina Industrial Commission issued on its Form 21 . . . .

Upon review, the Commission ordered an independent medical evaluation not only to determine "the extent of plaintiff's continuing disability, if any," but also to assess whether plaintiff "would benefit from a resumption of vocational rehabilitation."

Thus, the issue whether plaintiff has an ongoing disability from his admittedly compensable workplace injury has consistently been

ALPHIN v. TART L.P. GAS CO.

[192 N.C. App. 576 (2008)]

before the Commission. Nothing in this Court's first decision precluded the Commission from addressing the issue. Further, plaintiff's own Form 44 application for review raised the issue, as well as the relevance of the parties' Form 21 to that issue. As this Court observed in *Joyner*, "[i]nasmuch as the Industrial Commission decides claims without formal pleadings, it is the duty of the Commission to consider every aspect of plaintiff's claim whether before a hearing officer or on appeal to the full Commission." *Id.* The Commission was entitled to seek out additional evidence—such as the evaluation—in order to address the issues before it. *Id.* Thus, we hold that the Commission did not err either in ordering the independent medical evaluation or in addressing the issue of plaintiff's continuing disability.

II

[2] Plaintiff contends that the Industrial Commission incorrectly applied the law regarding presumptions when it stated:

> 18. Plaintiff's acceptance of the Commission's determination that plaintiff was capable of earning wages and the Commission's award of compensation for his rating under N.C. Gen. Stat. § 97-31 ended his presumption of continuing total disability.
>
> . . . .
>
> 36. The final decision by the Full Commission that plaintiff had reached maximum medical improvement, was capable of sedentary work and was entitled to payment for permanent partial disability based on his twenty-five percent (25%) rating ended plaintiff's presumption of continuing total disability.

Although these statements were each denominated a "finding of fact," they actually present conclusions of law that we review de novo.

In this case, the parties entered into an initial Form 21 and subsequent Forms 26 that gave rise to a rebuttable presumption of continuing disability. *See Clark v. Wal-Mart*, 360 N.C. 41, 44, 619 S.E.2d 491, 493 (2005) (holding that presumption of disability in favor of employee arises in "limited circumstances," including "(1) when there has been an executed Form 21 . . .; (2) when there has been an executed Form 26 . . .; or (3) when there has been a prior disability award from the Industrial Commission"). As this Court has explained, "when a Form 26 supplemental agreement is executed, the nature of the disability is determined according to what is specified in the Form 26 supplemental agreement." *Foster v. U.S. Airways, Inc.*, 149 N.C. App.

913, 918, 563 S.E.2d 235, 239, *disc. review denied,* 356 N.C. 299, 570 S.E.2d 505 (2002).

The Supreme Court instructed in *Saunders v. Edenton Ob/Gyn Ctr.*, 352 N.C. 136, 140, 530 S.E.2d 62, 65 (2000), that we must look to the terms of the last agreement of the parties.[1] Therefore, the terms of the final Form 26, "entered into by the parties and approved by the Commission, are the final terms which became binding between the parties." *Id.* In this case, as the Commission found, "[t]he parties executed a fifth Form 26 agreement for payment of continuing temporary total disability compensation beginning March 4, 1993. The Commission approved this Form 26 agreement on May 11, 1993. Plaintiff again had a presumption of continuing temporary total disability under this agreement." Nothing in the Commission's opinion and award and nothing in the record itself indicates that the parties ever entered into another agreement.

Thus, by virtue of the final Form 26, plaintiff had a presumption of continuing total disability. The Commission, however, concluded that this presumption "ended" with the Commission's "final decision" that plaintiff had reached maximum medical improvement, that he was capable of sedentary work, and that he was entitled to compensation for his rating. As support for this conclusion, the Commission cited only *Dancy v. Abbott Labs.*, 139 N.C. App. 553, 534 S.E.2d 601 (2000), *aff'd per curiam,* 353 N.C. 446, 545 S.E.2d 211 (2001). Nothing in *Dancy,* however, appears to justify the conclusion reached by the Commission.

In *Dancy,* the Form 21 agreement providing for total disability benefits for an indefinite period was followed by a Form 26 agreement specifying that the employee would be paid temporary partial disability for two weeks. *Id.* at 559, 534 S.E.2d at 605. This Court held, based on *Saunders,* that the Form 26 "superseded the earlier agreement," and the plaintiff had only a presumption of continuing partial disability. *Id.* Since, in this case, the final Form 26 provided for payment of total disability benefits for "necessary weeks," there was still a presumption of continuing total disability.

The only part of *Dancy* that can be viewed as addressing when the presumption has "ended"—the basis for the Commission's conclusion in this case—is the opinion's general discussion of the pre-

---

1. In *Saunders,* the Court concluded that the plaintiff was entitled only to a presumption of continuing *partial* disability because the final Form 26 was an agreement to pay partial disability for "necessary" weeks. 352 N.C. at 139-40, 530 S.E.2d at 64.

sumption. This Court observed that "[w]e have held that '[u]nless the presumption [in favor of disability] is waived by the employee, no change in disability compensation may occur absent the opportunity for a hearing. . . . [O]ne such way a waiver might occur is when an employee and employer settle their compensation dispute in a manner consistent with N.C. Gen. Stat. § 97-17 [(1999)], and that settlement is subsequently approved by the Commission.' " *Id.* at 558, 534 S.E.2d at 604 (quoting *Kisiah v. W.R. Kisiah Plumbing, Inc.*, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996), *disc. review denied*, 345 N.C. 343, 483 S.E.2d 169 (1997)). The Court stressed, however, that if there has been no subsequent Form 26, it " 'has been uniformly held that an agreement for the payment of compensation, when approved by the Commission, is as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal.' " *Id.* (quoting *Pruitt v. Knight Publ'g Co.*, 289 N.C. 254, 258, 221 S.E.2d 355, 358 (1976)).

Thus, under *Dancy*, the Form 26, as approved by the Commission, was binding on the parties as if it were an award affirmed on appeal. The Commission and defendants have identified no waiver by plaintiff of the presumption of disability arising from the Form 26. In that event, *Kisiah* specifies that "absent a settlement with the employee, an award of temporary total disability cannot be undone without resort to a lawful determination by the Commission that the employee's disability no longer exists—which will require the application of law to fact and, therefore, a hearing." *Kisiah*, 124 N.C. App. at 80, 476 S.E.2d at 438. At that hearing, the employee may rely upon the presumption and "need not present evidence . . . unless and until the employer 'claim[ing] that the plaintiff *is* capable of earning wages . . . come[s] forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is *capable* of getting one, taking into account both physical and vocational limitations.' " *Id.* at 81, 476 S.E.2d at 439 (quoting *Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990)).

In this case, the Commission made no finding that it conducted a hearing at which defendants bore the burden set out in *Kennedy*, and the record contains no finding by the Commission in any of its opinions and awards that suitable jobs are available for plaintiff and that plaintiff is capable of getting one, taking into account both his physical and vocational limitations. "[O]nly the Commission can ascertain whether an employer has presented evidence rebutting a Form 21 presumption of disability." *Id. See also Saums .v. Raleigh Cmty.*

ALPHIN v. TART L.P. GAS CO.

[192 N.C. App. 576 (2008)]

*Hosp.*, 346 N.C. 760, 763-65, 487 S.E.2d 746, 749-50 (1997) (applying tests in *Kisiah* and *Kennedy*); *Rice v. City of Winston-Salem*, 154 N.C. App. 680, 683, 572 S.E.2d 794, 797 (2002) ("Thus, absent waiver of the presumption by the employee or a hearing by the Commission, no change in disability benefits owed may occur.").[2]

The Commission based its conclusion that the presumption had "ended" on three facts found in prior opinions and awards: (1) plaintiff's reaching maximum medical improvement, (2) the Commission's determination that plaintiff was capable of sedentary work, and (3) the Commission's award of permanent partial disability based on a 25% rating and plaintiff's acceptance of that compensation. The Commission's conclusion cannot be reconciled with established law on the presumption of continuing disability.

In *Brown v. S & N Commc'ns, Inc.*, 124 N.C. App. 320, 330, 477 S.E.2d 197, 203 (1996), this Court held unambiguously: "A finding of maximum medical improvement is not the equivalent of a finding that the employee is able to earn the same wage earned prior to injury and does not satisfy the defendant's burden [of rebutting the presumption]." In addition, the fact that plaintiff is capable of earning wages in sedentary work does not rebut the presumption because it relates only to plaintiff's physical limitations and does not establish that suitable jobs exist and that plaintiff is capable of getting one, taking into account both his physical limitations—the sedentary work limitation—and his vocational limitations. *See Outerbridge v. Perdue Farms, Inc.*, 181 N.C. App. 50, 56, 638 S.E.2d 564, 569 (holding that when Commission found an employee capable of sedentary work, it "determined the *existence* of Plaintiff's disability: that his work capacity since [the specified date] is *sedentary*," but it did not determine extent of plaintiff's disability), *aff'd per curiam*, 361 N.C. 583, 650 S.E.2d 594 (2007).[3]

---

2. The approval of a Form 24 request to terminate benefits is not sufficient to "end" the presumption of disability. *King v. Yeargin Const. Co.*, 124 N.C. App. 396, 399-400, 476 S.E.2d 898, 901 (1996) (holding that Rule 21 presumption applied even when Commission had approved Form 24 request to terminate benefits because plaintiff had been released to return to work), *disc. review denied*, 345 N.C. 343, 483 S.E.2d 169 (1997).

3. For the same reason, defendants' argument that plaintiff is precluded from challenging the Full Commission's 8 December 2000 opinion and award—in which the Commission found plaintiff was capable of sedentary work—under the principles of *res judicata* and collateral estoppel is beside the point. We agree that since plaintiff did not appeal the finding that he is capable of sedentary work, that ruling is now the law of the case. *See Bicket v. McLean Secs., Inc.*, 138 N.C. App. 353, 359, 532 S.E.2d 183,

The Commission essentially concluded that the presumption had ended because plaintiff was released by Dr. Rich to return to work in a sedentary position with restrictions. Yet, it has long been the law that "[a]n employee's release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, nor does it automatically deprive an employee of the [Form 21/26] presumption." *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994).

The Commission's final consideration—that it had found plaintiff to be entitled to his rating—appears to be based on a mistaken belief that plaintiff's entitlement to or receipt of benefits under N.C. Gen. Stat. § 97-31 (2007) precluded the receipt of benefits under N.C. Gen. Stat. § 97-29 (2007) for temporary total disability. While an employee cannot recover under N.C. Gen. Stat. §§ 97-29 and 97-31 simultaneously, the employee has the option of choosing the most favorable recovery. *Franklin v. Broyhill Furniture Indus.*, 123 N.C. App. 200, 205, 472 S.E.2d 382, 385-86, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996).

Defendants contend that plaintiff's acceptance of payment for his permanent partial disability rating pursuant to N.C. Gen. Stat. § 97-31 constituted plaintiff's election. The Commission and defendants have overlooked *Gupton v. Builders Transp.*, 320 N.C. 38, 40, 357 S.E.2d 674, 676 (1987), in which our Supreme Court pointed out that this Court had "overlooked case law from [the Supreme] Court indicating that an award under N.C.G.S. § 97-31 does not necessarily foreclose the award of additional benefits to which a claimant might be entitled." The Court explained that the focus of N.C. Gen. Stat. § 97-31 is on "the prevention of double recovery, not exclusivity of remedy" and, therefore, "a plaintiff entitled to select a remedy under either N.C.G.S. § 97-31 or N.C.G.S. § 97-30 may receive benefits under the provisions offering the more generous benefits, *less* the amount he or she has already received." *Gupton*, 320 N.C. at 43, 357 S.E.2d at 677.

---

186 (" 'As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal.' " (quoting *Tennessee-Carolina Transp., Inc. v. Strick Corp.*, 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974)), *disc. review denied*, 352 N.C. 587, 544 S.E.2d 777 (2000). Nevertheless, it does not resolve the question whether plaintiff is no longer entitled to a continuing presumption of total disability.

Given the holding in *Gupton*, plaintiff did not, in this case, elect his remedy when he accepted compensation for his rating under N.C. Gen. Stat. § 97-31. If he should ultimately succeed on his claim under N.C. Gen. Stat. § 97-29 or N.C. Gen. Stat. § 97-30 (2007), then plaintiff would be entitled to choose the more favorable remedy with defendants receiving a credit for previous payments made to plaintiff. *See Guerrero v. Brodie Contrs., Inc.*, 158 N.C. App. 678, 685, 582 S.E.2d 346, 350 (2003) (remanding to Commission for failing to award "credit to defendants for payment of the lump sum permanent partial disability award" after plaintiff sought ongoing temporary total disability benefits).

In sum, none of the Commission's "findings" support its conclusion that plaintiff's presumption of continuing disability had "ended." To the contrary, as a result of the parties' final Form 26, plaintiff had the benefit of a continuing presumption of total disability. He was not required to produce any evidence of disability, and, instead, the burden rested with defendants to prove plaintiff's employability. We must, therefore, reverse the Commission's conclusion that plaintiff "has not proven that he has been totally disabled or had diminished wage-earning capacity after May 5, 1995." We remand for a determination by the Commission whether defendants have rebutted plaintiff's presumption of continuing total disability.[4]

III

[3] Plaintiff also challenges the Commission's decision that plaintiff did not make "a proper showing that plaintiff's unjustified refusal to cooperate [in vocational rehabilitation] had ceased." Plaintiff contends that the Commission failed to make appropriate findings of fact and conclusions of law supported by competent evidence on this issue.[5]

The Commission found that in the hearing before the deputy commissioner, plaintiff presented the following testimony to support his claim that he has shown that he is ready, willing, and able to cooperate with rehabilitation:

---

4. Because of our resolution of this issue, we do not address plaintiff's challenges to various findings of fact made under the Commission's misapprehension of the law.

5. Plaintiff asserts various contentions regarding the Commission's opinion and award dated 8 December 2000. While plaintiff filed a notice of appeal from that decision, he did not perfect that appeal and, therefore, those contentions are not properly before us.

(a) His condition has not improved since his injury and he continued to be treated by Dr. Rick [sic] and his family physician for pain control.

(b) Defendants had not provided him with any vocational rehabilitation services since the Form 24 application was approved [May 5, 1995].

(c) He had expressed his willingness to fully cooperate with any vocational rehabilitation efforts that defendants provided. Plaintiff testified that he authorized his attorney to write numerous letters expressing his willingness to cooperate with vocational rehabilitation, to defendants, defendants' attorney, the Industrial Commission and his previous rehabilitation provider; that he had submitted a motion for reinstatement of compensation and an affidavit both expressing his willingness to fully cooperate with any vocational rehabilitation offered by defendants.

(d) He has at all times since June 26, 1996, been willing to fully cooperate with any vocational rehabilitation offered by defendants.

(e) He believed that he had fully cooperated with vocational rehabilitation prior to the suspension of his compensation in 1995.

(f) Since June 26, 1996, defendants have not offered him any medical services, despite his requests for services.

(g) He has not been able to work since June 26, 1996.

(h) He talked to and filed an application for services with the North Carolina Division of Vocational Rehabilitation Services (State Vocational Rehabilitation Services). Plaintiff's application was dated February 14, 2002.

(Alteration original.) The Commission then found that defendants had, on cross-examination of plaintiff, established that plaintiff was receiving social security disability, had not applied for unemployment compensation, had not looked for work since 1 June 1996, had not made efforts to return to school or seek vocational retraining, and did know that he could obtain help from the Division of Vocational Rehabilitation Services until four days prior to the hearing, at which time he immediately applied for assistance. Plaintiff has not assigned error to this description of his testimony.

ALPHIN v. TART L.P. GAS CO.

[192 N.C. App. 576 (2008)]

The Commission acknowledged that plaintiff has "repeatedly expressed his willingness to cooperate with vocational rehabilitation offered by defendants." It then found that "[s]imultaneously with his assurances at the hearing that he was ready and willing to cooperate, plaintiff also testified that he has not been able to work since June 26, 1996, and believed he had fully cooperated with vocational rehabilitation." The Commission then summarized plaintiff's prior conduct resisting vocational rehabilitation, explaining that in light of that conduct, it could not accept plaintiff's testimony as credible.

The Commission reasoned: "Considering his past conduct, the Full Commission finds that if plaintiff is of the opinion that he fully cooperated with previous vocational rehabilitation, his current written assurances of willingness to cooperate are probably a forecast of more of the same conduct." The Commission, therefore, found: "Even though a Plaintiff's written assurance of intent to cooperate with vocational rehabilitation may be sufficient, based on the greater weight of the evidence the plaintiff in this case did not make a proper showing that he was willing to cooperate with vocational rehabilitation through his written declarations of willingness to cooperate or through his application for vocational assistance through the State Vocational Rehabilitation Program several days prior to the hearing before the Deputy Commissioner."

"Before making findings of fact, the Industrial Commission must consider *all* of the evidence. The Industrial Commission may not discount or disregard any evidence, but may choose not to believe the evidence *after* considering it." *Weaver v. Am. Nat'l Can Corp.*, 123 N.C. App. 507, 510, 473 S.E.2d 10, 12 (1996). "In weighing the evidence, the Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and may reject a witness' testimony entirely if warranted by disbelief of that witness." *Lineback v. Wake County Bd. of Comm'rs*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997).

Plaintiff argues on appeal, however, that "[b]y finding that the Plaintiff can never be determined to be 'credible based on his pre-1995 hearing activities, the Industrial Commission denies Plaintiff the second chance clearly anticipated in the Court's [prior] opinion and § 97-25." We do not read the Commission's credibility findings as being based solely on plaintiff's prior conduct. Instead, the Commission pointed out that plaintiff's showing of a willingness to cooperate was based almost entirely on oral and written expressions

ALPHIN v. TART L.P. GAS CO.

[192 N.C. App. 576 (2008)]

of intent unsupported by current conduct corroborating those statements. The lone step undertaken by plaintiff—seeking assistance from the State—occurred only four days before the hearing in front of the deputy commissioner.

In assessing the sincerity of plaintiff's representations, the Commission could appropriately consider, as it did, plaintiff's lack of recent conduct suggesting a willingness to cooperate and any recent conduct inconsistent with his expressed intent. The Commission referred to plaintiff's pre-1995 conduct only in reference to plaintiff's testimony at the hearing that he believed that he had, during that time frame, fully cooperated. The Commission could reasonably determine that if plaintiff believed that his prior conduct constituted full cooperation—when the Commission had since ruled otherwise—then plaintiff's bare representation that he is now willing to cooperate was not entitled to much weight.

The Commission made ample findings of fact explaining its reasoning—and the basis for its credibility determination—in refusing to reinstate plaintiff's benefits terminated under N.C. Gen. Stat. § 97-25. It is not the role of this Court to revisit the Commission's decision regarding plaintiff's credibility. See Pitman v. Feldspar Corp., 87 N.C. App. 208, 216, 360 S.E.2d 696, 700 (1987) (holding that the Commission may refuse to believe certain evidence, controverted or not, and may accept or reject the testimony of any witness), disc. review denied, 321 N.C. 474, 364 S.E.2d 924 (1988). We, therefore, affirm the Commission's opinion and award to the extent it concluded that plaintiff had not made a proper showing that his unjustified refusal to cooperate with vocational rehabilitation had ceased.

Affirmed in part; reversed and remanded in part.

Judges McCULLOUGH and STEELMAN concur.